The first case that the panel will hear argument on this morning is Talley v. Clark et al. And Ms. Szymborski, call on you. Yes, Your Honor. Good morning. My name is Katrina Szymborski. I'm from Patterson, Belknap, Webb, and Tyler, and I represent Appellant Contest 3-4 Belknap. I'm going to be observing a few minutes over the phone. Granted. Thank you. Here, Mr. Talley alleges that he was sanctioned to 13 months of disciplinary custody. As this court has described, administrative custody in the past, which is less restrictive than disciplinary custody. He was confined in a cell for 23 hours a day, five days a week, and 24 hours the other two days. He ate meals by himself. His sole contact was with the officials, and he was denied contact with family for the duration of his time there. He was prohibited from participating in educational or rehabilitative activities. Let me. Speak a little slower. Speak a little slower. Yes, if you would go a little slower, please. And the audio has a little bit of distortion. So perhaps if you speak more slowly, it will make the distortion less impactful on what we're able to hear from you. Let me stop you at this point because you've just referred to a few issues. But in particular, the administrative confinement here, you're seeking reversal. The Commonwealth is suggesting that we need to remand. Doesn't it seem that there are a number of issues here raised and apparent from rulings that have been made that really require some factual exploration that has not been made by the district court? For example, what is administrative confinement? What is disciplinary custody? And are you suggesting that one of those is the equivalent of solitary confinement? That's not clear to me from your briefing, nor is it clear to me from the orders and opinions of the district court. Yes, Your Honor, there is a slight disagreement as to the scope of the remand, though we both sides agree that this case should be remanded. Now, I'm just going to address what you said kind of in order, Your Honor. First, with regard to the scope of the remand, the state essentially asks this court to order the district court to phase discovery from certain issues first before moving on to others. What Your Honor said is absolutely right. The factual record should be developed below, and it should be in the form of discovery. The court should not accept the invitation to micromanage the district court's management of discovery. The court should just remand and allow the district court to continue with proceedings in line with this court's opinion. Your next question, Your Honor, if I understood you correctly, was about whether or not administrative or disciplinary custody is solitary confinement. And in fact, in quote V. Horn, this court specifically said that administrative custody is solitary confinement. Now, in Mitchell v. Horn, this court pointed out that disciplinary custody is more restrictive than administrative custody. So the reasonable inference from that is that the disciplinary custody that Mr. Talley was sanctioned with is indeed solitary confinement. So are you alleging, as a matter of fact, that administrative custody is the equivalent of disciplinary custody? Your Honor, we are alleging, as a matter of fact, that disciplinary custody is more restrictive than administrative custody, which has been called solitary by this court. Well, I guess I'm missing something. It's hard for me to understand how, though I guess it is possible, that if administrative custody is solitary confinement, how can disciplinary custody be more restrictive than solitary confinement? And assuming, at least theoretically, it can be, have you set forth allegations indicating what the differences are? Well, Your Honor, disciplinary custody is more restrictive in that there are certain privileges that people who are confined in that sort of facility are not afforded. However, numerous cases by this court have described administrative custody as 24 hours a day in a cell, one night at night in a recreational cave, and weekends 24 hours a day with the lights on all the time. Those same conditions apply to disciplinary custody. I think that fairly describes solitary confinement. The difference is that in disciplinary custody, there are certain privileges that are afforded people in administrative custody that those in disciplinary custody cannot have. The DOC at the regulation DC-801 calls disciplinary custody a maximum restrictive status of confinement for inmates in the Pennsylvania system. All right. So, if that satisfied Your Honor's question, I'll move on. Well, if we remand, you have suggested then that there would be a need for discovery, and I am assuming then that you are anticipating that the matter will go to summary judgment or cross-summary judgment motions. Yes, Your Honor. We anticipate that there should be full discovery, and then we assume that there would be summary judgment motions filed. That's right, Your Honor. All right. Turning back to Mr. Talley's complaint, he also referenced in his complaint and explicitly asked the district court to take judicial notice of the Disability Rights Network case. As a pro se litigant, he apparently faulted for assuming, as he says in there, this is a public document. He can't be faulted for assuming that he could incorporate by reference the facts alleged in that complaint. And in that complaint, the plaintiffs call the prolonged isolation of mentally ill inmates a Dickensian nightmare. It exacerbates the symptoms of mental illness, which can include self-injury and suicide. That is all over Mr. Talley's complaint, and sometimes these symptoms are regarded as infractions, which are then punished with still more time in disciplinary confinement. So these people, like Mr. Talley, because of their mental illness, are trapped in an endless cycle of isolation and punishment, which further deteriorates their mental illness. So these allegations, both just by saying that he has mental illness by describing his multiple suicide attempts, he's attempted to light himself on fire multiple times, he attempted to hang himself, he'd shoot through the leather restraints on a chair that he was in saying that he wasn't, that alone should be enough. But if it's not enough, we can also look to the Disability Rights Network case that he referenced in the complaint to see these allegations. Now, these allegations- Judge Hardiman or Judge Roth, do you want to get in at any point? I know it's rather awkward having five of us in a completely different situation. I have never hesitated to get in when I want to get in. I know you don't hesitate, Judge Roth, but sometimes the technology can itself obstruct even the strongest of wills. I have never been obstructed by the court's technology, thank you, Chief Judge. I have a question for counsel. Are you pursuing the Eighth Amendment claim against the Program Review Committee defendants, or has that fallen by the wayside? Yes, Your Honor, we are indeed pursuing that. The defendants were informed by Mr. Talley as he pleads. They were informed of his situation and informed that he wished to appeal the sanction against him, the disciplinary confinement that he was sanctioned with. And they told him that if he wants to appeal, he shouldn't say that he is suicidal. But what did they have to do? I didn't read the complaint. They had any responsibility for putting Mr. Talley in solitary? Well, Your Honor, they were not involved in the proceeding. Your Honor, you are correct about that. But they were involved in denying him the right to appeal because he asked for a certified peer specialist to whom he could dictate his appeal since he wasn't allowed a pen. And they told him that they refused and they told him that if he wanted the right to appeal, he shouldn't say he was suicidal. Yeah, but that's not an Eighth Amendment violation. The Eighth Amendment violation, as alleged, is all about solitary. It's not about, you know, you didn't let me appeal, you didn't give me a pen. It's about the fact that he was placed in solitary, wasn't it? But what he wanted to appeal was the placement in solitary, Your Honor. So in effect, they... So you're arguing that the inability to appeal is an Eighth Amendment violation? Well, Your Honor, they... That sounds a lot more like a due process claim than an Eighth Amendment claim. Your Honor, it is indeed a due process claim. You're absolutely right. And should this court deem that they, that those defendants were only part of the due process, the Fourteenth Amendment liberty violation, that we would concede that, Your Honor. All right, thank you. Yeah, thank you. So significantly, there is no disagreement that this case should be remanded because the state now concedes that the district court erred in at least two ways. First, in finding that Mr. Talley did not exhaust his administrative remedies. And second, in dismissing his claim that he was deprived of property without due process when prison officials assessed his account for the cost of the items damaged in a suicide attempt. Let me stop you. Let me stop you right there, just to be clear. Wasn't one of the errors committed by the district court a determination regarding Mr. Talley's mental condition or the degree of any mental disability? The district court determined, did it not, that Mr. Talley suffered from a severe mental illness. Am I right? Yes, Your Honor. That's right. On the availability of exhaustion for him. Yes. Explain how that is and explain, if you would, please, just what are the implications of that erroneous determination by the district court for how this case should go forward, even on remand? Absolutely, Your Honor. I just want to note my 12 minutes just ran out. Actually, according to my clock, you've still got almost two minutes to go. So but we don't rigidly adhere to the clock here. Thank you, Your Honor. Yes. So, Your Honor is absolutely right that the district court determines that Mr. Talley suffered from serious mental illness. Now, in prison regulations, a serious mental illness is that refers to an inmate who is on mental illness roster C, the most serious. Mr. Talley is on mental illness roster C. C as in cat. C as in cat. That's right, Your Honor. He pleads that in his complaint. I believe it's footnote four or five. As such, somebody who is on mental illness roster C does not have access to that exception for filing an appeal out of time. And there is no disagreement as to that fact. That's right there in the rules. So any untimely appeal after the 15 days that defendant Yotus had told him would not have been. Indeed, the remedies that the district court decided were available to him based on their classification of him as being in roster D with serious mental illness are not actually available to him. All right. Assuming that we are all agreed, meaning the panel and both sides here, that this case must be remanded, that it has to go back for discovery. Shouldn't we provide some guidance to the district court? I may have misheard you, but I thought I heard you say when you were referring to discovery that it be be open or even wide open discovery upon return. That can't be. Given the procedural history of this case, we've got two district court opinions. There's an opinion that addresses the initial screening with the district court did. And then we have the separate opinion and the disposition with respect to the claim against the DOC. Right. Yes. So shouldn't we remand with some instructions to the district court just as to how any discovery should be narrowed, which necessarily will narrow the issues that the district court needs to consider upon remand? Well, your honor, the management of discovery is entirely the district court's business. Well, it is ab initio, but I'm not sure that we are so defanged as a court of appeals. Once we once the case has reached us to provide some instructions. Well, your honor, the default rule is that everything goes to discovery together. And that's what happened. And it was which we rely on. It's happened in multiple other cases. So there's nothing in the PLRA that that changes the general procedural rules. But still, at the same time, we have frequently sent cases back to the district court instructing them on what discovery should cover and not cover. I agree with Chief Judge Smith. It would be very helpful to us for you to explain what discovery should cover and why you take that position. Okay, your honor. So. In discovery. I'll put this another way. I believe that the the facts leading up. All. They're all so, so similar, so inextricably linked. The PLRA exhaustion facts. Those are all of the same facts that whether or not he was denied a pen, for example, whether or not he could have access to pen in that one day. Sidewatch, but before he had access to his belongings. All of those questions. Those are all linked, for example, to the 14th Amendment due process claims. I don't really think that there. I don't really think that there would be very much of an efficiency gain from bifurcating discovery, only because it's it's these are all of the same facts that support all of the claims across the board, I think that it would be a better use of resources to simply go forward with with with discovery altogether. It's a discreet, discreet set of facts that need to be explored here, and I don't envision that discovery would be too, too, too burdensome to either party. So I don't believe that in this case, it that this is a case where it would necessarily make sense to instruct the district court how to divide. Are there any further questions of Ms. Chamborski? We are having her back on rebuttal. No, no. All right. If not, thank you. We will have you back on rebuttal and we'll hear from Ms. Tesoro. Thank you. May I please the court. I'm Claudia Tesoro. I'm with the Attorney General's Office and I'm representing the police, of course. I want to start, if I can, with the section 1983 part of the case was dismissed for failure to state a claim. And it of course has two sub sections. One is procedural due process, which was asserted only against defendants Yotus and DuPont. I think we had some dialogue with opposing counsel on the bench about the fact that they really are not the people that determine the conditions that an inmate, including Mr. Talley, lives in. They were simply just deciders of the misconduct. And what we're examining as far as their potential liability has to do with that. We've acknowledged the property interest that's at stake in one of the nine misconducts at issue here and the remand that we have agreed is appropriate is to sort out what happened with regard to that particular case. But otherwise, from the defense point of view, this is a relatively clear cut application of the principles that this court has articulated in light of the Sandin decision of the Supreme Court, namely Griffin and Smith. The stake for due process purposes is that there is no liberty interest if a form of confinement is not an atypical and significant hardship. I think earlier in the argument, there was a dialogue about the concept of solitary confinement versus administrative custody versus disciplinary custody. And I believe that what we are compelled to face up to is that both administrative custody and disciplinary custody, as those words are often used, do involve extended confinement for long hours with limited privileges. There are some differences among them. So are you suggesting, Mr. Soro, or are we to take from that point that the labels themselves are not really dispositive, but that we really are in a fact-intensive area when we're dealing with the conditions of administrative confinement and disciplinary confinement and solitary confinement? Well, I think the vocabulary is a stumbling block to some degree, but I'm not saying – excuse me. What I'm trying to say is that there are, by now, fairly well-established definitions of – indeed, definitions for all three of them. So what are they? Well, I think that disciplinary custody is imposed for rule infractions, and the privileges are quite limited when one is subjected to disciplinary custody. I'm generalizing now. Administrative custody is a word that has more security-related implications. For example, if somebody needs to be protected inside the institution. What I think we should add to this conversation is that Mr. Talley was placed in the special management unit, which is a different type of supervision and, in fact, a less demanding one of the inmate. It is one where the inmate has the ability to work through a program and progress and cut, potentially, his disciplinary time by succeeding at certain goals that the counselors and psychologists provide for the inmate. So in one way, I can answer shortly, yes, all these things have nuances and details. But our position is that the word solitary confinement is actually a loaded term that, in general, covers everything. But solitary confinement, such as Mr. Talley seems to want to litigate, is not what he was – does not necessarily mean that he was denied his constitutional rights. But that's not our duty to determine now, right? Because one of my troubles with this case is that between the briefing and the argument, we're dealing with abstractions. And it seems to me that what needs to happen is the case needs to go back to the district court so the district court can dig in and ask questions about what exactly happened with Mr. Talley. Isn't that what needs to happen next? Well, I think what you're saying makes a great deal of sense, Judge Hardiman. My job, as you certainly understand, is to defend the decision. But I think that it would be a lot easier for all of us if that happened, if we go back and pin down exactly what's going on. I'm not trying to give up my client's interests here, but I do understand what you mean. And I think that the conditions – We know a few things. We know, I think, that he was at Graterford for a very short period of time, maybe as short as nine days. So that's not 13 months in solitary. That's nine days at Graterford. Then he gets transferred from Graterford to Fayette. And then he gets put in the special management unit, as I understand it, at Fayette. But beyond those very high-level points, I really don't know what happened to this fellow. And it seems to me it's not our job. It's the district court's job to sort through all that. Well, as a follow-up on Judge Hardiman, for instance, is he required to serve the 13 months in Fayette in special management that he was told to do in Graterford? Well, that was what I was trying to explain about what the special management unit is. Potentially, I think it's probably been more than 13 months by now, but potentially he could work his way out of there and have his disciplinary obligation reduced if his behavior was good. That's why we argued that being in the special management unit for most of the 13 months would be better than being in, I'll call it straight disciplinary or restricted custody. But I agree with you, we can't quite tell. I mean, maybe I'm just so immersed in these things from my obligations in my job that I don't see it as difficult to sort out as my colleague on the other side or the court perhaps does, because this is not such an everyday event for everybody. But I think that the fact that there are different levels of custody and different characteristics of the different types of custody, frankly, there are even more than the ones we've tossed around this morning as far as specialized kinds of protective or restricted custody that's necessary for inmates in general. Well, assuming that, and I have no reason to doubt that indeed there are perhaps even more variations, doesn't that actually fortify the need to send this back for factual exploration of those differences and in particular how those differences may have impacted on the availability of an administrative appeal here? Well, yes, I understand that and I agree up to a point, but I also would like to point out that Mr. Talley drafted this complaint and got this litigation going by suing specific defendants. And the defendants are not necessarily the people that are in charge of the conditions of custody that were imposed on him. This is particularly true for the first, excuse me, the procedural due process part of the case where he only named Notice and DuPont as defendants and they are the adjudicators of the underlying conduct only, as was pointed out earlier. And as I noticed in a recent, well not that recent actually, 2007 decision by the Seventh Circuit, ruling against a prisoner on an administrative complaint does not cause or contribute to the underlying violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution. A guard who rejects an administrative complaint about a completed act of misconduct does not. But I thought the procedural due process claim was the inability of the appeal or the preclusion of the appeal. It wasn't that they just ruled against him, was it? I don't think it's been argued that way. I think that the point is that a procedural due process claim for an inmate post-Sandon involves the same concept of personal involvement as any other Section 1983 case. And the fact that he lost, so to speak, at the misconduct stage does not in and of itself give rise to a procedural due process claim. There's no indication that the rights that an inmate is typically allowed to have under Wolf v. McDonald were denied him. Assume we agree with you on that, that giving someone a hearing and ruling against them is not a procedural due process violation, then opposing counsel is going to have to come up with some other reason that there was a procedural due process violation. But I'm still not clear as to what part of the case the Commonwealth wants us to shave off on remand. Are there certain that you believe should not be in jeopardy on remand on certain claims? Can you tell us who those defendants, if there are such defendants or such claims? Well, to summarize it as best I can, on the 14th Amendment procedural due process part of the case, our argument was that only the portion that involved the property interest should be remanded. The rest should not because the 14th Amendment claim is only raised against Yotus and DuPont, and they are not responsible for the thing that Mr. Talley is complaining about. The Eighth Amendment is a similar but not identical situation. More defendants are named on the Eighth Amendment part of the case, but here it is crucial, I think, that Mr. Talley was physically transferred after 19 days to SCI Fayette. And the defendants in question, with the possible exception of the Secretary of Corrections, had nothing to do with what happened in terms of the conditions of confinement and the possible Eighth Amendment violation that he would want to litigate that he experienced at a completely different institution. So from your perspective, which defendants are still live on remand on the Eighth Amendment claim? The only one that I think is potentially live, although there's a whole other layer of supervisory liability and personal involvement and so on, but the Secretary of Corrections is responsible for all institutions. So if he suffered an Eighth Amendment conditions violation upon transfer, the people at Gradoford, the misconduct people and the PRC defendants would not be responsible for that. Before my time runs out, I wanted to try and also touch upon the failure to exhaust, because I guess everybody pretty much agrees that the district court made that determination on an incorrect basis. And therefore, a remand to figure out whether the failure to exhaust was nevertheless correct ruling or whether, as Mr. Talley argues, there was no remedy available to him. And I wanted to bring up a question that is sort of a spinoff of the judges' incorrect rationale about not being subject to time limits. As a matter of fact, the 801 misconduct regulation of the department does say that an untimely grievance may be rejected, but it doesn't have to be rejected. The PRC, the second stage officials, have the authority to overlook some of those requirements, such as timing. And I also was able to find an analogous case called Brown v. Sprinkle, fairly recent from this court, 187 Federal Appendix 229, which allowed for the possibility of an extension of time, if you will, for an inmate who misses a deadline, even if the inmate should have filed a case within a certain time frame. It can be argued that an extension is requestable and grantable. So that would be something to go into on remand, as far as we're concerned, on the exhaustion issue. The part of the rationale that the appellant raised for why he shouldn't have been found to have failed to exhaust is that how could he possibly have filed a timely appeal when he didn't have a pen? And I realize that is one problem. But as I said, he could ask for more time, potentially. And the other thing he said is that he didn't have the decision from the second misconduct round, the last two misconducts, until it was too late. But I wanted to point out to the court that he was still fully able to appeal from the result of which he was aware, even without having the physical decision in front of him. And there was nothing stopping him from doing that. As a matter of fact, that's why I believe the verbal instructions that he complains about, that you have 15 days to appeal, are important. Because if on the 15th day he doesn't have the decision itself, he knows that if he wants to challenge the outcome, he should do so quickly. But there again, was that remedy available to him? I think it was. But if that's something that requires further exploration on remand, I think that would be part of the process or part of the mission of the parties in the court at the next phase of this case. Let me ask you a connected question. The disciplinary hearing on the last two issues was done by video when he was at Fayette and Officer Yotus was at Graterford. Now, doesn't that bring Officer Yotus into the Graterford picture so that the claims against him would survive past the transfer of Mr. Talley to Fayette? Well, yes and no. Because of the timing of that remote hearing, whatever Yotus did in connection with the hearing that could potentially be the grounds for a federal claim would exist regardless of the transfer. The problem with suing Yotus, though, is that you don't sue the hearing officer when you're complaining about something that is the responsibility of other people. And Yotus is not answerable for the things that Mr. Talley has tried to complain about, even though he was overseeing the remote hearing shortly after the transfer. Do you have anything further, Ms. Tesoro? I think I've covered the points I wanted to make. Thank you, Your Honor. All right. Thank you. If there are no other questions from the panel, we will hear rebuttal from Ms. Shimborski. Thank you, Your Honor. I'm just going to address a few points. First, with regard to the point that his placement in SMU was cut short, I would just like to say that SMU is a housing unit. It's separate from disciplinary custody. Disciplinary custody is a disciplinary classification. So you can be, a prisoner can be in SMU and in disciplinary custody at the same time. And this court has actually acknowledged that multiple times in multiple cases. And multiple cases, in fact, describe SMU as solitary, requiring prisoners to stay in their cells 24 hours a day. Similarly, the suggestion that his transfer from being cut short of arm is unavailing. As Judge Rolfe pointed out, the remote hearing was conducted by Defendant Yotis on February 8th. So it's very odd to say that his January 31st hearing somehow mooted his claims arising from a February 8th hearing. Even putting aside that that does show that Defendant Yotis was still in charge of him in some way. Now in terms of whether or not Defendant Yotis was responsible for the condition he found himself in, the conditions are a mentally ill person in solitary and the special harm that arises when a mentally ill person is put in solitary. Defendant Yotis, and Defendant DuPont for that matter, who told Defendant Yotis that he could go ahead with the hearing even though he was fully apprised of Mr. Talley's situation. They were the ones that were responsible for placing him into those conditions. I also want to note that I believe Defendant DuPont is DOC-wide, not just Greater Florida. I think his responsibilities extend beyond that facility. Counsel, could you just specify for us exactly which claims you want to pursue on remand against which defendants? Thank you. Yes, Your Honor. The Eighth Amendment claim should be pursued against Defendant Yotis, Defendant DuPont, and Defendant Wetzel. And the Fourteenth Amendment claim can be pursued against the remaining defendants on both the liberty interest and the property interest questions. And lastly, the Eighth Amendment should go forward against the DOC. I'm sorry, which defendants on the Fourteenth Amendment? Which defendants and which claims? Both the property interest and the liberty interest. All right, against which defendants are you bringing the property claim? And the property claim was for the assessment against his account? Yes. Okay, which defendants are you claiming are liable for that? Yeah, excuse me. I misspoke. On the property interest, it is only Yotis, DuPont, and Wetzel because that arose from the February 8th hearing. Who was the third when you said Wetzel? Defendant Wetzel. Okay, and what about the liberty claim? The liberty interest claim would be Yotis, DuPont, Wetzel, and the four PRC defendants. Okay, and what exactly is the basis of the liberty claim again? The liberty interest at stake is the duration of 13 months in solitary confinement for somebody with mental illness. We contend that under Sandin, that does depart significantly from the ordinary conditions of confinement. And that he would not have this regard to that confinement. Your Honor asked a series of questions about whether or not the lack of due process was that he received a hearing. But that is not what he needed. In fact, the lack of due process was that he didn't have a writing utensil before the hearing. So he couldn't write up a statement. He couldn't request witnesses. Those are all things that should be afforded to incarcerated people when they have a disciplinary hearing. Then he requested that because he wasn't able to do those things, he would be in the hearing on January 22nd. And he asked Defendant Yotis, would you please postpone this until I have a pencil or a pen and I can do these things? And Defendant Yotis said, no. Defendant DuPont told me that I told him what happened. I told him your situation. He told me that I can go ahead with this even though you are unable to ask for witnesses and unable to write a statement. So they went ahead with it. And he received disciplinary confinement as a result of that hearing. All right. Any other claims? Oh, and lastly is the ADA claim against DOC, Your Honor. All right. Thank you very much. Thank you, counsel. The panel will take the matter under advisement. But as you can certainly anticipate, it will be with a remand to the district court subject to directives from us as to how the district court is to direct the parties to further both claims and defenses pursuant to what we've heard today. So thank you very much. We will take the case under advisement. This matter is concluded.